IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JANE DOE,                        )
                                 )   Civil Action
              Plaintiff          )   No. 12-cv-06898
                                 )
        vs.                      )
                                 )
BOYERTOWN AREA SCHOOL DISTRICT;  )
MARK E. MacLELLAN;               )
HARRY W. MORGAN;                 )
DANIEL F. GOFFREDO;              )
DION E. BETTS;                   )
BRETT A. COOPER; and             )
ROBERT S. HAYMAN,                )
                                 )
              Defendants         )

                    *      *      *

APPEARANCES:

        ANTHONY J. BARATTA, ESQUIRE
            On behalf of Plaintiff

        EVERETT COOK, ESQUIRE
            On behalf of Defendant Mark E. MacLellan

        JOHN E. FREUND, III, ESQUIRE
            On behalf of Defendants Boyertown Area School
            District, Harry W. Morgan, Daniel F. Goffredo,
            Dion E. Betts, Brett A. Cooper, and Robert S.
            Hayman

                    *      *      *

JAMES KNOLL GARDNER
United States District Judge

**O P I N I O N**

**TABLE OF CONTENTS**

<u>Section</u>                                                              <u>Page</u>

<u>SUMMARY OF DECISION</u> ................................................... 3

<u>JURISDICTION</u> .......................................................... 4

<u>VENUE</u> ................................................................. 5

<u>PROCEDURAL HISTORY</u> .................................................... 5

<u>STANDARD OF REVIEW</u> .................................................... 6

<u>FACTS</u> ................................................................ 10
  <u>Defendant MacLellan</u> ................................................ 10
  <u>School District Defendants</u> ......................................... 14
<u>CONTENTIONS OF THE PARTIES</u> .......................................... 21
  <u>Contentions of School District Defendants</u> ......................... 21
  <u>Contentions of Plaintiff</u> ........................................... 22
<u>DISCUSSION</u> ........................................................... 23
  <u>MacLellan Motion to Dismiss</u> ........................................ 23
  <u>School District Motion to Dismiss</u> .................................. 24
    <u>Count I - Section 1983</u> ........................................... 24
      <u>Deprivation of Constitutional Rights - Fourth Amendment</u> ..... 24
      <u>Deprivation of Constitutional Rights - Fourteenth Amendment</u> . 26
      <u>School District Liability</u> ................................... 26
      <u>Individual Defendants' Liability</u> ............................ 30
    <u>Count III - Title IX</u> ............................................. 32
      <u>Individual Defendants</u> ....................................... 32
      <u>Boyertown Area School District</u> .............................. 33
    <u>Count VII - Pennsylvania Constitution</u> ............................ 36
    <u>Damages</u> .......................................................... 38
<u>CONCLUSION</u> ........................................................... 39

This matter is before the court on the Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6) of Defendants Boyertown Area School District, Harry W. Morgan, Daniel F. Goffredo, Dion E. Betts, Brett A. Cooper, and Robert S. Hayman filed July 15, 2013 ("School District Defendants' Motion to Dismiss")[1].  This matter is also before the court on the Motion to Dismiss Counts II, IV, V, and VI of Plaintiff's Amended Complaint Pursuant to Fed.R.Civ.P. 12(b)(6) of Defendant Mark E. MacLellan filed July 30, 2013 ("MacLellan's Motion to Dismiss").[2]

## SUMMARY OF DECISION

For the reasons expressed below, defendant Mark E. MacLellan's Motion to Dismiss is dismissed as untimely.

In addition, the School District Defendants' Motion to Dismiss is granted in part and denied in part.  It is granted to the extent that it seeks dismissal of: (A) plaintiff's Section 1983 claim[3] for a violation of her Fourth Amendment rights because plaintiff has not stated a claim for a Fourth Amendment violation; (B) plaintiff's Section 1983 claim for a violation of plaintiff's rights under the Fourteenth Amendment

---

[1]     Document 24.  Plaintiff's Response to School District Defendants' Motion to Dismiss was filed July 29, 2013 (Document 25).  A reply brief of the school district defendants ("School District Reply") was filed August 27, 2013 (Document 33).  Plaintiff's surreply brief ("Plaintiff's Surreply") was filed August 30, 2013 (Document 36).

[2]     Document 26.  Plaintiff's Response to MacLellan's Motion to Dismiss was filed August 9, 2013 (Document 27).

[3]     42 U.S.C. § 1983.

under a failure-to-train theory because plaintiff has not stated a claim for failure to train; (C) Count III against the individual defendants for violations of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688 ("Title IX") by agreement of the parties; and (D) plaintiff's claim for a violation of her rights to protection from unreasonable search and seizure under Article I, Section 8 of the Pennsylvania Constitution because plaintiff has not alleged that an unreasonable search and seizure occurred.

The School District Defendants' Motion to Dismiss is denied in all other respects because plaintiff has adequately pled a Section 1983 claim for a violation of her right to due process under the Fourteenth Amendment under a policy or custom of deliberate indifference theory; a claim for a violation of Title IX; and a claim for a violation of her right to due process under the Pennsylvania Constitution.

## JURISDICTION

This court has original jurisdiction over the subject matter of plaintiff's 42 U.S.C. § 1983 claim and Title IX claim based upon federal question jurisdiction pursuant to 28 U.S.C. § 1331.  This court has supplemental jurisdiction over plaintiff's pendent Pennsylvania state-law claim pursuant to 28 U.S.C. § 1367.

**VENUE**

Venue is proper pursuant to 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred in Boyertown, Berks County, Pennsylvania, which is located in this judicial district.  See 28 U.S.C. §§ 118, 1391(b).

**PROCEDURAL HISTORY**

Plaintiff Jane Doe initiated this action on December 10, 2012 by filing an initial Complaint against defendant Mark E. MacLellan.[4]

On April 26, 2013 plaintiff filed an Amended Civil Action Complaint against defendants Boyertown Area School District, Mark E. MacLellan, Harry W. Morgan, Daniel F. Goffredo, Dion E. Betts, Brett A. Cooper, and Robert S. Hayman.[5]

On May 15, 2013 defendant MacLellan filed Defendant Mark E. MacLellan's Answer to Plaintiff's Amended Civil Action - Complaint.[6]

On July 15, 2013 defendants Boyertown Area School District, Harry W. Morgan, Daniel F. Goffredo, Dion E. Betts, Brett A. Cooper, and Robert S. Hayman ("School District Defendants") filed School District Defendants' Motion to

---

[4]     Document 1.

[5]     Document 13.

[6]     Document 15.

Dismiss.[7]  On July 29, 2013 plaintiff filed Plaintiff's Response to School District Defendants' Motion to Dismiss.[8]

On July 30, 2013 defendant MacLellan filed MacLellan's Motion to Dismiss seeking to dismiss Counts II, IV, V, and VI of plaintiff's Amended Complaint.[9]  On August 9, 2013 plaintiff filed Plaintiff's Response to MacLellan's Motion to Dismiss.[10]

By Order dated August 23, 2013 and filed August 27, 2013 I granted defendants leave to file a reply brief in support of their motion to dismiss.[11]  The School District Defendants filed the School District Reply on August 27, 2013.[12]  By Order dated and filed August 30, 2013 I granted plaintiff leave to file a surreply brief opposing defendant's motion to dismiss.[13]  Plaintiff's Surreply was filed August 30, 2013.[14]

## STANDARD OF REVIEW

"A Rule 12(b) motion to dismiss a complaint must be filed before any responsive pleading."  Turbe v. Government of

---

[7]     Document 24.

[8]     Document 25.

[9]     Document 26.

[10]    Document 27.

[11]    Document 32.

[12]    Document 33.

[13]    Document 35.

[14]    Document 36.

<u>Virgin Islands</u>, 938 F.2d 427, 428 (3d Cir. 1991).  Federal Rule of Civil Procedure 12(b) states in part, "A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed."

A claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted."  A Rule 12(b)(6) motion requires the court to examine the sufficiency of the complaint.  <u>Conley v. Gibson</u>, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957) (abrogated in other respects by <u>Bell Atlantic Corporation v. Twombly</u>, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  Generally, in ruling on a motion to dismiss, the court relies on the complaint, exhibits attached to the complaint, and matters of public record, including other judicial proceedings.  <u>Sands v. McCormick</u>, 502 F.3d 263, 268 (3d Cir. 2008).

Except as provided in Federal Rule of Civil Procedure 9, a complaint is sufficient if it complies with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  Rule 8(a)(2) does not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that

is plausible on its face.  <u>Twombly</u>, 550 U.S. at 570, 127 S.Ct. at 1974, 167 L.Ed.2d at 949.[15]

In determining whether a complaint is sufficient, the court must accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief.  <u>Fowler</u>, 578 F.3d at 210 (citing <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 233 (3d Cir. 2008)).

Although "conclusory" or "bare-bones allegations" will not survive a motion to dismiss, <u>Fowler</u>, 578 F.3d at 210, a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits.  <u>Phillips</u>, 515 F.3d at 231. Nonetheless, to survive a Rule 12(b)(6) motion, the complaint must provide "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." <u>Id.</u> at 234 (quoting <u>Twombly</u>, 550 U.S. at 556, 127 S.Ct. at 1965, 167 L.Ed.2d at 940) (internal quotations omitted).

---

[15]    The United States Supreme Court's Opinion in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 684, 129 S.Ct. 1937, 1953, 173 L.Ed.2d 868, 887 (2009), states clearly that the "facial plausibility" pleading standard set forth in <u>Twombly</u> applies to all civil suits in the federal courts.  <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir. 2009).  This showing of facial plausibility then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged", and that plaintiff is entitled to relief. <u>Fowler</u>, 578 F.3d at 210 (quoting <u>Iqbal</u>, 556 U.S. at 678, 129 S.Ct. at 1949, 173 L.Ed.2d at 884).

The court is required to conduct a two-part analysis when considering a Rule 12(b)(6) motion.  First, the factual matters averred in the complaint, and any attached exhibits, should be separated from legal conclusions asserted.  <u>Fowler</u>, 578 F.3d at 210.  Any facts pled must be taken as true, and any legal conclusions asserted may be disregarded.  <u>Id.</u> at 210-211.

Second, the court must determine whether those factual matters averred are sufficient to show that the plaintiff has a "plausible claim for relief."  <u>Id.</u> at 211 (quoting <u>Iqbal</u>, 556 U.S. at 679, 129 S.Ct. at 1950, 178 L.Ed.2d at 884).

Ultimately, this two-part analysis is "context-specific" and requires the court to draw on "its judicial experience and common sense" to determine if the facts pled in the complaint have "nudged [plaintiff's] claims" over the line from "[merely] conceivable [or possible] to plausible."  <u>Iqbal</u>, 556 U.S. at 679-680, 129 S.Ct. at 1949-1951, 178 L.Ed.2d at 884-885.

A well-pled complaint may not be dismissed simply because "it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."  <u>Twombly</u>, 550 U.S. at 556, 127 S.Ct. at 1965, 167 L.Ed.2d at 940-941 (internal quotations omitted).

## FACTS

### Defendant MacLellan

Based upon the averments in plaintiff's Amended Civil Action Complaint, which I must accept as true under the applicable standard of review discussed above, the pertinent facts are as follows.

Plaintiff first met defendant MacLellan during her freshman year of high school when she joined the Junior Reserve Officer Training Corps ("JROTC") class which Mr. MacLellan instructed.[16]  Mr. MacLellan gave his cell phone number to all of his students and established a reputation as being the cool teacher: allowing them to send text messages in class, allowing cheating, allowing the students to goof off, and granting female students passes to allow them to avoid other classes and spend time with him.[17]  This manner of teaching was intended to groom impressionable female students to trust him and confide in him as one of their peers.[18]

School district officials responsible for supervising MacLellan were aware of his actions or could have been aware through proper monitoring of his behavior.[19]

---

[16]     Amended Civil Action Complaint ¶ 26.

[17]     Id. ¶¶ 27-28.

[18]     Id. ¶ 28.

[19]     Id. ¶ 29.

During plaintiff's freshman year, one of the female freshman in Mr. MacLellan's class asked him about a text message which she received containing the word "clit".  Defendant MacLellan then gave plaintiff and the other female a verbal anatomy lesson about the vagina.[20]  When another female student asked Mr. MacLellan if he had any naughty pictures on his cellphone he smiled in response.[21]  When another female student showed plaintiff a heart in the middle of that student's bra, defendant MacLellan demanded that he be shown the heart which required her to pull down her shirt to the point that it exposed the student's breast.[22]

Plaintiff did not continue as a JROTC student after her freshman year, but continued to visit with Mr. MacLellan each school day for about 15 minutes before classes started.[23] Plaintiff told him that she had been seeing a boy in high school and Mr. MacLellan gave her relationship advice and asked for details regarding any sexual interaction between plaintiff and the boy.[24]

---

[20]    Amended Civil Action Complaint ¶ 29.

[21]    Id. ¶ 30.

[22]    Id. ¶ 31.

[23]    Id. ¶¶ 32-33.

[24]    Id. ¶ 34.

In February 2011, Mr. MacLellan began sending text messages back and forth to plaintiff from early morning until late at night.[25]  Such text messages were exchanged throughout the course of the school day and at times contained pictures of defendant MacLellan's erect penis and of him shirtless.[26]  Mr. MacLellan encouraged plaintiff to send pictures of herself in her underwear, which she did.[27]

After one of plaintiff's female friends told her that Mr. MacLellan was getting "head" (oral sex) from other students in JROTC, plaintiff texted him and asked if he wanted "head". Mr. MacLellan responded "when?".[28]  On another occasion, plaintiff texted Mr. MacLellan and told him that she was thirsty to which he replied that he had something for her to drink.[29]  On another occasion defendant MacLellan asked plaintiff to meet him after school by herself and was disappointed to see her with someone else so he walked away shaking his head.[30]

On April 11, 2011, while teaching on school grounds Mr. MacLellan arranged to meet with plaintiff after school.  He

---

[25]    Amended Civil Action Complaint ¶ 36.

[26]    Id. ¶ 37.

[27]    Id. ¶ 38.

[28]    Id. ¶ 40.

[29]    Id. ¶ 41.

[30]    Id. ¶ 42.

asked plaintiff to send him a text message indicating that she was 18 years old, although he knew that she was not.  He told plaintiff to pretend to walk home from school and he would stop and ask if she wanted a ride.[31]

        As defendant MacLellan planned, while plaintiff was walking home after school, he approached her and invited her into the back seat of his van.  Mr. MacLellan then drove her to a church parking lot where he parked the van, knelt down in front of plaintiff, pulled down her sweatpants and told her to lay down.  MacLellan then pulled down plaintiff's underwear and performed oral sex on plaintiff.  He then pulled his pants down and placed his penis inside plaintiff's mouth.  After this occurred, Mr. MacLellan drove plaintiff home and let her out.[32]

        Following this incident, defendant MacLellan sent text messages to plaintiff containing videos depicting sexual intercourse and asked if she wanted to do these acts.[33] Plaintiff replied no.[34]

        In September 2011, Mr. MacLellan was charged with endangering the welfare of a child and corrupting a minor by the

---

[31]     Amended Civil Action Complaint ¶ 43.

[32]     Id.

[33]     Id. ¶ 44.

[34]     Id.

Berks County District Attorney's Office.[35]  These charges stemmed
from his sexual contact with plaintiff that included oral sex,
fondling her vagina, and kissing her breasts.[36]  MacLellan pled
guilty to corrupting the morals of a minor and was sentenced to
five years of probation.[37]

### School District Defendants

In February 2003, student S.M. advised Boyertown Area
School District, through its high school principal, Steven R.
Kline, of numerous instances of defendant MacLellan's misconduct
including: (1) telling female JROTC cadets that pregnancy rates
are lower in the Marine Corps because he was out of the Marine
Corps; (2) telling male students that he "wishes he was younger
because he could bang the high school girls" and "you guys are
so lucky because if I was still in high school, I'd be banging
the trash out of her"; (3) having a female student sit on
MacLellan's lap while other female students were giving back
massages to male students in the room; (4) being touched by
female students in an inappropriate manner including hugging
him; (5) explaining to students what type of breasts he liked

---

[35]    Amended Civil Action Complaint ¶ 45.

[36]    Id.

[37]    Id.

most; (6) describing his sexual activities to students including having videotaped his sexual activities.[38]

Principle Kline interviewed the students and concluded that, although one student could corroborate the allegations, student S.M.'s allegations were unfounded and closed the matter without taking further action.

In 2006, student T.G. completed a student sexual harassment form concerning Mr. MacLellan containing the following allegations: (1) Mr. MacLellan made sexual remarks to her for two and a half years; (2) Mr. MacLellan and T.G. viewed a video in a classroom together of a woman giving a man oral sex and Mr. MacLellan asked T.G. when they, Mr. MacLellan and T.G., were going to make a video like that; (3) Mr. MacLellan commented about T.G.'s chest and how she smelled good; (4) during a military ball, Mr. MacLellan took T.G. to the side and told her that she looked good and kept looking down at her chest; (5) Mr. MacLellan took a mirror out of his bag and threw it on the ground under T.G. in an attempt to look up her skirt; (6) another girl told T.G. that Mr. MacLellan loaned her money and because that girl hadn't paid Mr. MacLellan back, he told her to drop her pants and suggested sex positions they could try.[39]

---

[38]    Amended Civil Action Complaint ¶ 46.

[39]    Amended Civil Action Complaint ¶ 48.

At about the same time, student R.D. provided a statement to the school district containing the following allegations: (1) if student R.D. used the "F word" Mr. MacLellan would tell her a story about how it can happen by what she was wearing on a particular day; (2) R.D. borrowed money from Mr. MacLellan and he told her that if she didn't have it returned to him by a certain day she had better be wearing a skirt, and when R.D. returned the money on time he replied that he wished she had not; (3) Mr. MacLellan told R.D. that if she was wearing a skirt he could push her underwear over and have sex with her.[40]

At about the same time, student B.H. completed a student sexual harassment complaint form containing the following allegations: (1) Mr. MacLellan made sexually oriented comments to female students; (2) B.H. made a complaint in tenth grade about Mr. MacLellan, but dropped it because everybody denied it; (3) B.H. overheard Mr. MacLellan telling other students that they had "big boobs"; (4) B.H. observed Mr. MacLellan grab another student's upper leg.[41]

After receiving the complaints of T.G., R.D., and B.H., Principal Daniel F. Goffredo and Superintendent Harry W. Morgan allegedly performed an investigation during which they

---

[40]    Amended Civil Action Complaint ¶ 49.

[41]    Id. ¶ 50.

dismissed the credibility of the students.[42]  Rather than investigate each complaint, Principal Goffredo and Superintendent Morgan decided to investigate only one allegation, viewing a pornographic website.[43]  Because they were not able to completely substantiate this allegation they found that MacLellan had not sexually harassed any students.[44]  Mr. MacLellan admitted saying "what's big" to T.G. on five occasions and as such was given an unsatisfactory rating, suspended for five days, and told to contact a district employee assistance program for one on one sexual harassment training.[45]  MacLellan attended three such trainings.[46]

After the alleged violation, student T.G. reported that she had never gotten over what happened and felt as though the school district and Robert S. Hayman, senior instructor in the Naval Science program and MacLellan's direct supervisor, never backed her up, but rather embarrassed her after the allegations against Mr. MacLellan were made.[47]

---

[42]    Amended Civil Action Complaint ¶ 55.

[43]    Id.

[44]    Id.

[45]    Id.

[46]    Id.

[47]    Id. ¶ 57.

By 2006 after four students made allegations of sexual harassment by defendant MacLellan, it was clear to Principal Goffredo and Superintendent Morgan that Mr. MacLellan was a known risk to students.[48]  The 2006 alleged investigation was a sham intended to cover up any potential bad publicity should the allegations against Mr. MacLellan become public.[49]  No report of the allegations was made to either the Department of the Navy or the Naval Service Training Command.  No report was made to the Pennsylvania Child Abuse Hotline.  The school gave greater credence to Mr. MacLellan than students despite the fact that similar allegations had been made in 2003.  And the investigation focused on only one small part of the allegations.[50]

After the 2006 investigation, the school district continued to allow Mr. MacLellan to act in a manner more akin to a teenager than a teacher, which allowed Mr. MacLellan access and influence over minor teenage girls.[51]  At one point, Mr. MacLellan's supervisor Hayman personally observed Mr. MacLellan

---

[48]    Amended Civil Action Complaint ¶ 58.

[49]    Id.

[50]    Id. ¶¶ 59-60.

[51]    Id. ¶ 61.

violating protocol by fitting female students for uniforms in
the Supply Room by himself.[52]

       When defendant MacLellan's inappropriate contact with
plaintiff occurred the principal of the high school was Brett A.
Cooper and the superintendent of the high school was Dion E.
Betts.[53]  Hayman, Cooper, and Betts each should have known that
plaintiff, a sophomore who was not a student in Mr. MacLellan's
class was repeatedly and continuously in the presence of and
meeting with Mr. MacLellan.[54]  At no time did defendants Betts,
Cooper, or Hayman put in place a method to scrutinize teachers
with a known risk of sexual harassment to ensure that future
sexual harassment would not occur.[55]  Rather, the school
district's response to Mr. MacLellan's past sexual harassment
was so ineffectual that it communicated to Mr. MacLellan and
students that Mr. MacLellan's behavior was acceptable, which
emboldened Mr. MacLellan and chilled complaints from students.[56]

       The school district's ineffectual action to
investigate, react to, punish, terminate, monitor, supervise, or
train Mr. MacLellan was due to highly deficient internal

---

       [52]     Amended Civil Action Complaint ¶ 62.

       [53]     Id.

       [54]     Id. ¶ 63.

       [55]     Id. ¶ 64.

       [56]     Id. ¶ 65.

policies for student safety; such action demonstrated deliberate indifference to its obligation to ensure that Mr. MacLellan was fit to be a teacher.[57]  Further, the school district's actions in response to Mr. MacLellan's known history of sexual harassment created a hostile environment in the school building.[58]

The school district, through Mr. MacLellan's supervisor Hayman, Principal Goffredo, Superintendent Morgan, and thereafter Principal Cooper and Superintendent Betts established a custom of ignoring or downplaying reports of sexual harassment, suppressing specific complaints of harassment against Mr. MacLellan, allowing Mr. MacLellan to breach school rules in order to accomplish his goal of grooming female students for inappropriate sexual relations, and a custom of inadequate training and monitoring of employees who exhibited an unreasonable risk that they would commit future acts of sexual harassment.[59]  This policy in part caused the eventual sexual abuse suffered by plaintiff.[60]

---

[57]     Amended Civil Action Complaint ¶ 67.

[58]     Id. ¶ 68.

[59]     Id. ¶ 69.

[60]     Id. ¶ 70.

## CONTENTIONS OF THE PARTIES

### Contentions of School District Defendants[61]

The School District Defendants argue that Counts I, III, and VII of plaintiff's Amended Civil Action Complaint should be dismissed under Rule 12(b)(6) because plaintiff has failed to state a claim upon which relief may be granted in each of these counts.

Specifically, they allege that plaintiff has not alleged a Section 1983 claim for a violation of the Fourth Amendment because she has not alleged an unreasonable search or seizure during a criminal investigation.  They further argue that plaintiff has not alleged a Section 1983 claim for a violation of the Fourteenth Amendment because she has not alleged a custom or policy of deliberate indifference or, in the alternative, that plaintiff has not alleged that the school district failed to properly train its employees.  The School District Defendants then argue that plaintiff has not alleged any specific conduct tying defendants in their individual capacity to Count I.

School District Defendants contend that plaintiff's claim in Count III for a violation of Title IX should be

---

[61]    I only describe the contentions of the School District Defendants in their motion to dismiss, and not defendant MacLellan in his motion to dismiss, because as described below, defendant MacLellan filed his motion to dismiss after his answer was filed, therefore I am dismissing his motion as untimely.

dismissed against individual plaintiffs because the private right of action under Title IX only applies to agencies receiving federal funds. They then argue that plaintiff's Title IX claim against the school district fails to state a claim because plaintiff has not alleged that an appropriate person, with actual knowledge of MacLellan's actions, responded with deliberate indifference.

Finally, the School District Defendants contends that plaintiff's claim in Count VII for a violation of the Pennsylvania Constitution Article I, Section 8, should be dismissed because plaintiff has not alleged an unreasonable search or seizure.

### Contentions of Plaintiff

Plaintiff argues that she has sufficiently stated a Section 1983 claim for violation of her Fourth Amendment rights because the scope of the Fourth Amendment extends beyond criminal investigations and applies to searches and seizures by school officials. Plaintiff further contends that she has sufficiently stated a Section 1983 claim for violation of her Fourteenth Amendment rights because she has pled sufficient facts to plausibly claim that her Fourteenth Amendment right to due process was violated when the school district defendants maintained a custom or policy of deliberate indifference which caused her to be sexually assaulted. Plaintiff further contends

that the School District Defendants are liable under Section 1983 for their failure to train, which failure caused her to be sexually assaulted.

With respect to Count III, plaintiff concedes that her Title IX claim should be dismissed against the individual defendants Morgan, Goffredo, Cooper, Betts, and Hayman. However, plaintiff argues that she has pled sufficient facts to state a Title IX claim against Boyertown School District because an appropriate person in the school district had actual knowledge of defendant MacLellan's actions and responded with deliberate indifference.

Finally, plaintiff alleges that she has stated a claim in Count VII for a violation of the Pennsylvania Constitution for the same reasons she alleges in stating a claim for a violation of the Fourth Amendment. Specifically, she asserts that the Pennsylvania Constitution affords greater protection of privacy than the Fourth Amendment of the United States Constitution and that this protection applies to civil searches and seizures in a school setting.

## DISCUSSION

### MacLellan Motion to Dismiss

Pursuant Federal Rule of Civil Procedure 12(b) a motion to dismiss brought under Rule 12(b) is untimely when presented after an answer has been filed. Specifically, Federal

Rule of Civil Procedure 12(b) states, in part, "A motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed".

Defendant Mark E. MacLellan filed his motion to dismiss after having filed his answer to the Amended Civil Action Complaint.  Therefore, his motion to dismiss is dismissed as untimely.

### School District Motion to Dismiss

#### Count I - Section 1983

In order to adequately plead a Section 1983 claim, plaintiff must allege a deprivation of her Constitutional rights by someone acting under the color of state law.  Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995).  Here, plaintiff has alleged that the School District Defendants deprived her of her constitutional rights under the Fourth Amendment and the Fourteenth Amendment.

Deprivation of Constitutional Rights - Fourth Amendment

Plaintiff has alleged that the sexual assault which she suffered constituted a deprivation of her Fourth Amendment right to personal security and bodily integrity.  The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend IV.

Although the United States Supreme Court has applied the Fourth Amendment to personal security claims and bodily integrity claims, in each instance the claim has hinged upon some type of search or seizure.  See e.g. Missouri v. McNeely, 133 S.Ct. 1552, 1558, 185 L.Ed.2d 696 (2013) which holds that withdrawing blood from a driver suspected of driving under the influence of alcohol was an invasion of bodily integrity which implicates an individual's "most personal and deep-rooted expectations of privacy" and therefore requires a warrant).

See also Terry v. Ohio, 392 U.S. 1, 19, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968) which holds that seizing petitioner and subjecting him to a search  by taking hold of him and patting down the outer surfaces of his clothing was an interference with petitioner's personal security which, if unreasonable, required a warrant.

The Amended Civil Action Complaint does not include any allegation of plaintiff being searched or seized by a state official, nor does it allege any violation of her personal security or bodily integrity in connection with a warrantless search or seizure.  As such, plaintiff has not stated a Section 1983 claim for a violation of her rights under the Fourth Amendment.  Therefore, to the extent that the School District Defendants' Motion to Dismiss seeks to dismiss such claim, it is granted.  I grant plaintiff leave to amend her

-25-

Amended Civil Action Complaint to clearly aver the factual and legal basis for a violation of her rights under the Fourth Amendment.

Deprivation of Constitutional Rights - Fourteenth Amendment

Plaintiff also alleges that the sexual assault which she suffered constituted a violation of her Fourteenth Amendment right to freedom from invasion of her personal security through sexual abuse.  Students have a constitutional right to be free "from invasion of [their] personal security through sexual abuse."  Stoneking v. Bradford Area School District, 882 F.2d 720, 726 (3d Cir. 1989), cert. denied, 493 U.S. 1044, 110 S.Ct. 840, 107 L.Ed.2d 835 (1990).  Further, "a teacher's sexual molestation of a student is an intrusion of the schoolchild's bodily integrity."  Id. at 727.

Here, plaintiff's allegation of having suffered a sexual assault is sufficient to constitute a violation of her Fourteenth Amendment rights.  As such, her complaint satisfies the initial inquiry of a Section 1983 claim to the extent that she has asserted a violation of her Fourteenth Amendment rights.

School District Liability

A municipality, in this case Boyertown Area School District, can be liable under Section 1983 when execution of a policy or custom inflicts a constitutional injury.  Monell v.

-26-

Department of Social Services, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611, 637 (1978).

To establish liability under Section 1983 plaintiff must show that (1) the school district's policy, practice, or custom played an affirmative role in bringing about the sexual abuse and (2) the school district acted with deliberate indifference to that abuse. Black by Black v. Indiana Area School District, 985 F.2d 707, 712 (3d Cir. 1993); see also Stoneking, 882 F.2d at 725.

Though a mere failure to investigate a claim itself is insufficient to establish a custom, a claim which asserts a practice of "reckless indifference to instances of known or suspected sexual abuse of students by teachers" is sufficient. Stoneking, 882 F.2d at 724-725.[62] In order for plaintiff to establish deliberate indifference "something more culpable must be shown than a negligent failure to recognize a high risk of harm to plaintiffs." Black, 985 F.2d at 712-713 (internal quotations omitted).

Here, plaintiff has alleged that the School District Defendants collectively received four complaints about

---

[62] In Stoneking, the United States Court of Appeals for the Third Circuit affirmed the district court's denial of summary judgment where there was evidence that the principal and superintendent of the school received at least five complaints of sexual assaults of female students; the principal recorded the allegations in a secret file at home; defendants gave the teacher excellent performance evaluation; and defendants discouraged students and parents from pursuing complaints. See 882 F.2d. 728-729.

inappropriate sexual behavior by defendant MacLellan.  In
response to such allegations, the school district merely
conducted a sham investigation.  Furthermore, plaintiff alleged
that the school district ignored or downplayed reports of sexual
harassment; suppressed specific complaints of harassment against
Mr. MacLellan; allowed him to breach school rules, and in doing
so allowed him to continue grooming female students for
inappropriate sexual relations; and inadequately trained and
monitored defendant MacLellan, knowing that he exhibited an
unreasonable risk of committing future acts of sexual
harassment.

      Finally, plaintiff alleged that the school district's
response to defendant MacLellan's past sexual harassment was so
ineffectual that it communicated to Mr. MacLellan and students
that such behavior was acceptable, which emboldened Mr.
MacLellan and chilled complaints from students.  Plaintiff
alleged that therefore the school board's policy led to her
ultimately being sexually assaulted by defendant MacLellan.

      As such, plaintiff has sufficiently pled that
defendants' conduct with regard to prior instances of sexual
harassment show a custom of deliberate indifference on the part
of defendants, which emboldened defendant MacLellan to continue
his inappropriate sexual behavior and caused plaintiff to be
sexually assaulted by him.

Accordingly, plaintiff has stated a Section 1983 claim for a violation of her Fourteenth Amendment rights because of the School District defendants' custom of deliberate indifference and to the extent that the School District Motion to Dismiss seeks to dismiss such claim, it is denied.

Plaintiff has additionally alleged that defendants have exhibited deliberate indifference because they were aware that a substantial danger existed that Mr. MacLellan would engage in inappropriate sexual contact with a student and yet failed to properly train its employees, which failure to train itself amounts to deliberate indifference.

"Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." City of Canton, Ohio v. Harris, 489 U.S. 378, 389, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412, 427 (1989). Additionally, plaintiff must allege that such failure to train actually caused the constitutional violation. Beck v. City of Pittsburgh, 89 F.3d 966, 972 (3d Cir. 1996).

Here, plaintiff has alleged that the School District Defendants had a custom of inadequate training and monitoring of employees who exhibited an unreasonable risk of future sexual

harassment.   Plaintiff's Amended Civil Action Complaint contains no further detail as to how the school district's failure to train constitutes deliberate indifference, or how the failure to train constitutes a constitutional violation.   Therefore, plaintiff has not stated a claim for a Section 1983 violation because of a failure to train.

As such to the extent School District Motion to Dismiss seeks to dismiss such claims, it is granted.   I grant plaintiff leave to amend her Amended Civil Action Complaint to clearly aver the factual and legal basis for a "failure to train" claim.

<u>Individual Defendants' Liability</u>

The School District Defendants seek dismissal of the Section 1983 claim against the individual defendants, arguing that plaintiff has not alleged facts tying any of the school district individual defendants to this cause of action. However, defendants fail to cite any applicable law to support their legal argument.   As such, to the extent that the School District Defendants' Motion to Dismiss seeks to dismiss claims of individual defendants' liability, the motion is denied. "Under this district's Local Rules, failure to cite any applicable law is enough to deny a motion as without merit." See <u>Bedrock Stone & Stuff v. Manufacturers and Traders Trust</u>,

2006 U.S. Dist. LEXIS 15806 *19-20 (E.D.Pa. March 31, 2006) (Gardner, J.).

In the School District Reply, the School District defendants argue that the doctrines of high public official immunity and qualified immunity exempt the named school district individual defendants from suit.  This alternative argument is not cognizable because it has been improperly raised on rebuttal rather than in the initial motion to dismiss.  See In re Fosamax Products Liability Litigation, 2013 WL 6669706, *1 (S.D.N.Y. December 18, 2013); Sample v. Holmes County Mississippi, 2013 WL 4553500, *3 (S.D.Miss. August 28, 2013); United States v. Molen, 2011 WL 1549276 *6 n.4 (E.D.Cal. April 21, 2011).

Because Federal Rule of Civil Procedure 12(g)(2) precludes the School District Defendants from making a Rule 12 motion that was available to them at the time they made their motion under Rule 12(b)(6), the School District Defendants' argument that high public official immunity and qualified immunity exempt the named individual defendants from suit is dismissed without prejudice to raise it again after determination of the current 12(b)(6) motion, the School District Motion to Dismiss.

**Count III - Title IX**

<u>Individual Defendants</u>

The school district defendants argue that the individual defendants must be dismissed from Count III, plaintiff's Title IX claim, because a private right of action under Title IX is only appropriate against agencies receiving federal funds.  <u>See</u> <u>Cannon v. Univ. of Chicago</u>, 441 U.S. 677, 709, 99 S.Ct. 1946, 1964, 60 L.Ed.2d 560, 582 (1979).

Plaintiff concedes that there is no individual liability and that plaintiff's claim for Title IX against individual defendants Morgan, Goffredo, Cooper, Betts, and Hayman should be dismissed.  <u>See</u> Plaintiff's Response to School District Defendants' Motion to Dismiss, page 16.  <u>See also</u> <u>Fitzgerald v. Barnstable School Committee</u>, 555 U.S. 246, 257, 129 S.Ct. 788, 796, 172 L.Ed.2d 582, 593 (2009) where the United States Supreme Court stated, "Title IX reaches institutions and programs that receive federal funds ... but it has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals."

As such, the School District Defendants' Motion to Dismiss is granted to the extent that it seeks dismissal of Count III of plaintiff's Amended Civil Action Complaint with regard to defendants Morgan, Goffredo, Betts, Cooper, and Hayman.

<u>Boyertown Area School District</u>

Plaintiff has alleged that Boyertown Area School District created or permitted an environment of sexual harassment and a hostile education environment in violation of Title IX because plaintiff was a female student who was subject to harassment in the form of sexual advancement and sexual contact from her teacher, Mr. MacLellan, which harassment was based on her gender and unreasonably interfered with her school performance.

Furthermore, she argues that the school district should be liable because school district officials with the ability to institute corrective measures had actual knowledge of defendant MacLellan's misconduct and were deliberately indifferent thereto.  Defendants argue that plaintiff has not stated a claim because her complaint does not allege that an appropriate person with actual knowledge of Mr. MacLellan's actions was deliberately indifferent to such actions.

In order to state a claim that Boyertown Area School District is liable under Title IX, plaintiff must allege that an official or appropriate person with the ultimate authority to address the discrimination had actual knowledge of the discrimination and failed to adequately respond, showing a deliberate indifference to discrimination.  <u>Gebser</u>, 524 U.S. at 290, 118 S.Ct. at 1999, 141 L.Ed.2d at 291 (1998).

Plaintiff's Amended Civil Action Complaint alleges that Principals Kline and Goffredo and Superintendent Morgan had actual knowledge of defendant MacLellan's history of sexual misconduct toward students through complaints from other students.  Principals Kline and Goffredo both were appropriate people with ultimate authority to address the discrimination because had the authority to institute corrective measures.  In Warren ex rel. Good v. Reading School District, 278 F.3d 163, 170 (3d Cir. 2002), the Third Circuit Court of Appeals stated, "The authority to supervise a teacher and to investigate a complaint of misconduct implies the authority to initiate corrective measures such as reporting [one's] findings to [one's] superior or to the appropriate school board official at the very least."

"An educational institution has 'actual knowledge' if it knows the underlying facts, indicating sufficiently substantial danger to students, and was therefore aware of the danger." E.N. v. Susquehanna Township School District, 2010 WL 4853700 (M.D.Pa. November 23, 2010)(citing Bostic v. Smyrna School District, 418 F.3d 355, 361 (3d Cir. 2005).

Plaintiff alleges that the school district had actual knowledge that Mr. MacLellan posed a substantial danger to students because the school district had received five complaints in the past from students alleging sexual harassment

and sexual misconduct by defendant MacLellan.  Specifically, plaintiff alleges that S.M.'s allegations in 2003 of Mr. MacLellan's sexual harassment; T.G.'s allegations in 2006 of his sexual harassment, including trying to look up her skirt, and instances of improper and suggestive touching; R.D.'s allegations in 2006 of defendant MacLellan's sexual harassment; and B.H.'s allegations in 2006 of Mr. MacLellan making inappropriate sexual comments -- when considered cumulatively are sufficient to allege that the educational institution had actual knowledge that Mr. MacLellan posed a danger to students.

The United States Supreme Court in Gebser held that "a complaint from parents of other students charging only that Waldrop had made inappropriate comments during class ... was plainly insufficient to alert the principal to the possibility that Waldrop was involved in a sexual relationship with a student" and therefore affirmed granting defendant's motion for summary judgment.  Gebser, 524 U.S. at 291, 118 S.Ct. at 2000, 141 L.Ed.2d at 292.

Here, plaintiff has alleged far more than a mere complaint from parents about inappropriate comments. Plaintiff's complaint alleges that defendants had notice of several prior instances of defendant MacLellan sexually harassing students, including prior instances of touching, which sufficiently alleges that the appropriate officials in the

school district had actual knowledge that there was a risk that MacLellan may sexually assault students.

In Jones v. Ewing Township Board of Education, 2010 WL 715554 (D.N.J. February 26, 2010) the district court found that plaintiff sufficiently stated actual knowledge where she pled that defendants were aware of the assailant's violent propensities and sexually inappropriate behavior prior to the assailant's attack on plaintiff and, despite this knowledge, defendants allowed him to continue attending classes at Fisher Middle School and took no steps to protect young female students, including plaintiff.

Finally, as described above, plaintiff has alleged sufficient facts to show that school district officials acted with deliberate indifference to prior students' complaints of sexual harassment and to the continued risk of sexual harassment posed by defendant MacLellan.  As such, plaintiff has sufficiently stated a claim that Boyertown Area School District violated her rights under Title IX.

### Count VII - Pennsylvania Constitution

Defendants allege that plaintiffs have not stated a claim for a violation of Pennsylvania Constitution's protection against searches and seizures because the allegations of the Amended Civil Action Complaint do not mention a criminal

investigation.[63]  Plaintiff alleges that the Pennsylvania
Constitution protection applies to civil searches and seizures
in a school setting.  In Theodore v. Delaware Valley School
District, 575 Pa. 321, 341, 836 A.2d 76, 88 (2003) the Supreme
Court of Pennsylvania stated, "Article I, Section 8 mandates
greater scrutiny in the school environment."

Article I, Section 8 of the Pennsylvania Constitution
provides protection from unreasonable searches and seizures
stating:

> The people shall be secure in their persons, houses,
> papers and possessions from unreasonable searches and
> seizures, and no warrant to search any place or to
> seize any person or things shall issue without
> describing them as nearly as may be, nor without
> probable cause, supported by oath or affirmation
> subscribed to by the affiant.

Pa. Const. art. I, § 8.

As addressed above, plaintiff has not stated a
Section 1983 claim for a Fourth Amendment violation because her
Amended Civil Action Complaint does not allege an unreasonable
search or seizure.  Although Pennsylvania cases have recognized
a "strong notion of privacy, which is greater than that of the
Fourth Amendment" such privacy concerns still must hinge upon a
search or seizure.  A violation of Article I, Section 8 of the

---

[63]     Because the School District Motion to Dismiss only seeks to
dismiss that portion of Count VII which alleges a violation of Pennsylvania
Constitution's protection against searches and seizures, I have not
considered that portion of Count VII that alleges a violation of Pennsylvania
Constitution's protection of due process rights.

Pennsylvania Constitution must consider the student's privacy interest, the nature of the intrusion created by the search, notice, and the overall purpose to be achieved by the search and the immediate reasons prompting the decision to conduct the actual search.  In re F.B., 555 Pa. 661, 667, 726 A.2d 361, 365 (1999).

Accordingly, because plaintiff has not alleged a violation of privacy in connection with any search or seizure, she has not stated a claim for a violation of the Pennsylvania Constitution Article I, Section 8.

As such, the School District Defendants' Motion to Dismiss is granted to the extent that it seeks dismissal of that portion of Count VII which asserts a claim for a violation of the Pennsylvania Constitution Article I, Section 8.  I grant plaintiff leave to amend her Amended Civil Action Complaint to clearly aver the factual and legal basis for a violation of the Pennsylvania Constitution Article I, Section 8.

**Damages**

The School District Defendants argue in their reply brief that plaintiff's claims for compensatory and punitive damages under the Pennsylvania Constitution must be dismissed. However, because this argument was available to defendants when they filed their motion to dismiss, yet raised for the first time in their reply brief, it is dismissed without prejudice to raise

again after determination of the current 12(b)(6) motion, the
School District Motion to Dismiss.  <u>See</u> Fed.R.Civ.Pro. 12(g)(2).

<u>**CONCLUSION**</u>

For all of the foregoing reasons defendants' motion to
dismiss is granted in part and denied in part.

Specifically, the School District Defendants' Motion
to Dismiss is granted to the extent that it seeks dismissal of
plaintiff's Section 1983 claim for a violation of her Fourth
Amendment rights and to the extent that it seeks dismissal of
plaintiff's Section 1983 claim for Fourteenth Amendment
violation under a failure to train theory.

Additionally, the School District Defendants' Motion
to Dismiss is granted to the extent that it seeks dismissal of
claims in Count III against the individual defendants for
violations of Title IX.  Finally, the School District Motion to
Dismiss is granted to the extent that it seeks dismissal of
plaintiff's claim for a violation of her rights to protection
from unreasonable search and seizure under Article I, Section 8
of the Pennsylvania Constitution.

In all other respects, the School District Defendants'
Motion to Dismiss is denied.

Finally, defendant MacLellan's Motion to Dismiss is
dismissed as untimely.